<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PHILIP A. BONADONNA, | : | |
| | : | |
| Plaintiff, | : | Civil No. 12-7339 (JBS) |
| | : | |
| v. | : | |
| | : | |
| DONNA ZICKEFOOSE, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Philip A. Bonadonna*, Pro Se*
04722-016
FCI Coleman
P.O. Box 1031
Coleman, FL 33521

John Andrew Ruymann, Asst. U.S. Attorney
Office of the United States Attorney
402 East State Street, Suite 430
Trenton, NJ 08608
Attorney for Defendants

**SIMANDLE, Chief Judge**

Defendants Zickefoose, Chung, and Lopez de LaSalle filed a motion to dismiss the complaint (Docket Item 21) in this civil case commenced by Plaintiff pursuant to *Bivens v. Six Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff filed opposition to the motion (Docket Item 22) to which Defendants replied (Docket Item 23). All papers have been

reviewed. For the following reasons, the motion will be granted.

**BACKGROUND**

Plaintiff submitted this civil complaint on or around November 29, 2012, asserting that while housed at the Federal Correctional Institution, Fort Dix, New Jersey, his constitutional right to medical care under the Eighth Amendment was violated by the three named defendants: Donna Zickefoose, the former warden of the Institution; Dr. Chung, a former physician for the Institution; and Dr. Lopez de LaSalle, a physician and former Clinical Director of the Institution.

Plaintiff's complaint reveals a medical history concerning his right shoulder. An attachment to his Complaint traces his medical history of numerous procedures on his right shoulder beginning in 1999 (orthoscopic surgery) at Miami FCI, and continuing in 2005 at FCI Otisville. The Bureau of Prisons treated him further in 2007 with a manipulation of his frozen shoulder ("adhesive capsulitis"), and a 2007 MRI (disclosing six medical issues with his shoulder). At FMC Butner, his chronic shoulder pain was addressed with physical therapy beginning in September, 2007, for right rotator cuff tear and chronic pain in the shoulder.

Relevant to this complaint, in October of 2008 after transfer to Fort Dix, Plaintiff underwent another shoulder surgery and received a prosthetic shoulder. (Compl. at 10.)

Post-operative x-rays revealed a "small round metallic density foreign body" of "uncertain etiology" projecting over the right humerus. As Plaintiff was in pain, he was seen by medical staff at Fort Dix for pain management on numerous occasions. (*Id.*) The pain treatment included Lidocaine patches.

Plaintiff asserts that an orthopedist examined him in May 2011 and discussed the possibility of revision surgery, but because he was not the surgeon of record, he was "unable to make a definitive recommendation for the revision surgery." (*Id.* at 11.) Plaintiff proceeded through the administrative remedy process, and his requests for revision surgery were denied. Defendant Zickefoose noted that the physician who completed the surgery (and according to Plaintiff "is undoubtedly his surgical team that left the 'foreign body' in his shoulder during the Prosthesis surgery . . . contributing to the Plaintiff's increase in pain and lack of mobility in his right shoulder"), recommended against revision surgery. That physician found that the pain in Plaintiff's shoulder was permanent, and the revision surgery would not be beneficial. (*Id.*)

Plaintiff asserts that defendant Zickefoose acted with deliberate indifference to his serious medical need when she denied him revision surgery on his shoulder. (*Id.* at 16.) He argues that she is personally involved in the violation of Plaintiff's rights because she "conducted a 'review of [the

3

Plaintiff's] medical records' thereby evidence both the required personal knowledge," and chose to follow the recommendation of the surgical doctor over the orthopedic who examined Plaintiff and recommended the surgery, which is more than simply denying the grievance. (*Id.* at 14-15.)

As to defendant Dr. Lopez De LaSalle, Plaintiff asserts that in her capacity as Clinical Director, she ultimately made the decision to deny surgery, (*id.* at 18), and was aware of ongoing medical problems at Fort Dix, (*id.* at 19). Thus, Plaintiff asserts that Dr. Lopez De LaSalle "has Eighth Amendment liability under the *Farmer v. Brennan* doctrine of obvious risk that is long standing, pervasive and well documented." (*Id.* at 20).

Finally, as to Dr. Chung, Plaintiff asserts that as part of Plaintiff's "primary care provider team" and a member of the Utilization Review Committee, he, too, had personal knowledge of the seriousness of Plaintiff's medical condition and chose to deny care. (*Id.* at 21).

Plaintiff seeks the performance of the surgery as well as monetary relief. (*Id.* at 6). He has since been transferred to the Federal Correctional Institution, Coleman, Florida.

Summonses were issued and on October 3, 2013, Defendants' request for an extension of time to answer was granted (Docket Item 20). On November 7, 2013, Defendants filed this motion to

dismiss, in lieu of an answer (Docket Item 21). Plaintiff filed opposition on December 23, 2013 (Docket Item 22) to which Defendants replied on December 30, 2013 (Docket Item 23).

## DISCUSSION

### A. Standard of Review

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *See id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal citation omitted). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

A "district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings" except that a "document integral to or explicitly relied upon in the complaint may be considered...." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

6

**B.**   **_Bivens_ Claims**

Plaintiff brings this action pursuant to _Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics_, 403 U.S. 388 (1971). In _Bivens_, the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. § 1983. _See id._ at 389; _see also Egervary v. Young_, 366 F.3d 238, 246 (3d Cir. 2004) (stating that _Bivens_ actions are the federal counterpart to Section 1983). In order to state a claim under _Bivens_, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. _See Couden v. Duffy_, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that _Bivens_ held that a parallel right exists against federal officials); _see also Collins v. F.B.I._, Civ. No. 10-3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that _Bivens_ actions are simply the federal counterpart to § 1983 claims brought against state officials and thus the analysis established under one type of claim is applicable under the other."). Under _Bivens_, "[g]overnment officials may not be held

liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676.

## C.   Plaintiff Has Not Alleged Deliberate Indifference

Defendants argue in the instant motion that Plaintiff has not established a *Bivens* claim, as he has not shown a constitutional violation. This Court agrees.

Where the claim is one alleging the failure to provide required medical care, as alleged by Plaintiff here, the core inquiry is whether the defendants' actions constituted "deliberate indifference" to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is shown if a defendant "intentionally den[ies] or delay[s] access to medical care or intentionally interfere[es] with the treatment once prescribed." *Id.* at 104–05. Furthermore, deliberate indifference can be manifested by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Moreover, "[s]hort of absolute denial, if necessary medical treatment is ... delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal quotation marks and citation omitted).[1]

---

[1]   A medical need is serious if it "has been diagnosed by a physician as requiring treatment or ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Atkinson v. Taylor*, 316

However, "[a]llegations of medical malpractice or mere disagreement as to the proper medical treatment are insufficient to establish a constitutional violation." *Szemple v. Univ. of Med. & Dentistry*, 451 F. App'x 187, 191 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)).

In this case, Plaintiff's complaint itself amply demonstrates that he was treated for his shoulder injury, including treatment for pain, post-surgery. Indeed, the BOP provided several operations and follow up care over the years. The differing opinions of the doctors concerning the potential efficacy of another surgery were considered by Defendants. That they continued to provide pain medication and chose to follow the recommendation of one physician over another does not rise to the level of deliberate indifference, whether that decision was right or wrong. At most, Plaintiff's allegations may support a medical malpractice claim, which has not been pled and whichmust adhere to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2670 et seq.

Plaintiff's complaint iterates numerous instances of medical treatment that he received while at Fort Dix: surgery, follow-up x-rays, "numerous occasions" when Plaintiff was seen by medical staff at Fort Dix for pain management; orthopedic evaluation; medical equipment such as a sling; and medications.

---

F.3d 257, 272–73 (3d Cir. 2003) (internal quotation marks and citation omitted).

Despite his treatment, Plaintiff's pain has persisted. Although this Court sympathizes with Plaintiff's condition, based on the foregoing, Plaintiff fails to state a claim for a violation of his Eighth Amendment rights.

Plaintiff's allegations of improper care against the Defendants do not rise to the level of a constitutional violation under the Eighth Amendment. At most, Plaintiff's allegations would suggest only his personal dissatisfaction with the level of medical care, which is not actionable under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (describing deliberate difference as "somewhere between the poles of negligence at one end and purpose or knowledge at the other"); *Christy v. Robinson*, 216 F. Supp.2d 398, 413–14 (D.N.J. 2002) (stating that courts "will generally not find deliberate indifference when some level of medical care has been offered to the inmate"); *Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000) (stating a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference). Moreover, one doctor's disagreement with another doctor's recommendation does not state a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

This Court also notes that non-medical personnel, such as Defendant Zickefoose, are generally not liable for medical non-

treatment, if the prisoner is under the care of a medical

professional, as in this case. *See Spruill v. Gillis*, 372 F.3d

218, 236 (3d Cir. 2004). As explained by the Court of Appeals

for the Third Circuit in a case where Plaintiff sought to sue

various prison officials for deliberate indifference:

> Because this action is under § 1983, James cannot rely
> solely on *respondeat superior* as a theory of
> liability. *See Rode v. Dellarciprete*, 845 F.2d 1195,
> 1207 (3d Cir. 1988). These various prison officials
> and administrators are not physicians, and a non-
> medical prison official is not charged with deliberate
> indifference for withholding adequate medical care
> from a prisoner being treated by medical personnel
> absent "a reason to believe (or actual knowledge) that
> prison doctors or their assistants are mistreating (or
> not treating) a prisoner." *Spruill*, 372 F.3d at 236.
> Once a prison grievance examiner becomes aware of
> potential mistreatment, the Eighth Amendment does not
> require him or her to do more than "review [ ] ...
> [the prisoner's] complaints and verif[y] with the
> medical officials that [the prisoner] was receiving
> treatment." *Greeno v. Daley*, 414 F.3d 645, 655 (7th
> Cir. 2005) (citing *Spruill*, 372 F.3d at 236).

*James v. Pennsylvania Dep't of Corr.*, 230 F. App'x 195, 198 (3d

Cir. 2007). Here, Defendant Zickefoose reviewed Plaintiff's

medical requests and noted in response to Plaintiff's grievances

that Plaintiff was receiving medical treatment post-surgery. It

is plain that Mr. Bonadonna has received, and continues to

receive, frequent and continuing medical care for his shoulder

condition.  That there are varying medical recommendations for

how to proceed, and that Mr. Bonadonna disagrees with some

medical options, does not show indifference by these defendants

in addressing his shoulder problem and does not state an Eighth Amendment claim for intentionally refusing to provide adequate medical treatment as required by the constitution. *White v. Napoleon*, 897 F.2d at 110; *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346; *Ozoroski v. Maue*, 2011 WL 1304603, at *5 (M.D. Pa. Mar. 31, 2011).

Thus, the facts as pled are insufficient to form a plausible claim for relief under *Bivens*, and the Complaint must be dismissed. *See Iqbal*, 556 U.S. at 679.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss will be granted and the Complaint will be dismissed. An appropriate Order follows.


       **s/ Jerome B. Simandle**
       JEROME B. SIMANDLE, Chief Judge
       United States District Court

Dated:  **June 26, 2014**